UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEWIS BROWN,

    *Plaintiff*,

v.

FEDERAL BUREAU OF
INVESTIGATION,

    *Defendant*.

Civil Action No. 23-02923 (AHA)

## Memorandum Opinion and Order

Lewis Brown brings this Freedom of Information Act ("FOIA") suit against the Federal Bureau of Investigation ("FBI"), challenging the adequacy of its search and response to his FOIA request. Both parties have moved for summary judgment. As explained below, the FBI's motion is granted in part and denied in part, and Brown's motion is denied.

**I.**     **Background**

In January 2023, Brown submitted a FOIA request to the FBI seeking "[a]ll records pertaining to the arrest of the undersigned Lewis Brown . . . on or about March 6, 1995 in Cleveland, Ohio." ECF No. 1-1 at 3. Brown also requested "[a]ll interview notes and statements made by Levester Johnson, initially upon his arrest on or about March 6, 1995 in Cleveland, Ohio." *Id.* In February 2023, Brown submitted a modified version of his original request, eliminating entirely the request for documents regarding Johnson and adding a request for "[a]ll investigation notes and documents regarding Lewis Brown, on or about March 6, 1995 in Cleveland, Ohio." *Id.* at 10; *see also* ECF No. 1 at 2.

The FBI issued a letter to Brown, acknowledging receipt of his original FOIA request. ECF No. 25-3 ¶ 6. The FBI eventually received Brown's modified request, and it issued another letter to Brown explaining that "unusual circumstances" applied that would delay the agency's ability to make a determination. *Id.* ¶ 7; *see* ECF No. 1-1 at 12. Brown appealed that response to the Office of Information Policy ("OIP") of the Department of Justice ("DOJ"). ECF No. 1 at 3; *see* ECF No. 1-1 at 17. OIP affirmed the FBI's determination. ECF No. 1 at 3; *see* ECF No. 1-1 at 20.

In May 2023, the FBI advised Brown that it had reviewed four pages of records and was releasing, in full or in part, two of those pages. ECF No. 25-3 ¶ 11; *see* ECF No. 1-1 at 23. Brown appealed to OIP, noting that the document produced was an incident report stating that, on the day in question, "a black male known as 'Black' came to the residence of [] for a pre-scheduled delivery of cocaine." ECF No. 1-1 at 29 (alteration in original) (capitalization omitted); *see id.* at 26. The report also indicated that when "Black" was arrested, his license identified him as Lewis Brown. *Id.* at 26. In his appeal to OIP, Brown asserted that "[i]f the subject was, as the form states, a 'known' individual, there must be a document related to this incident that explains how this individual was 'known.'" *Id.* at 29. Brown therefore demanded any document in the FBI's possession "that contains a description of the individual known as 'Black' that was given to them before the undersigned was arrested." *Id.* OIP denied the appeal as moot in light of the FBI's response. *Id.* at 31.

Brown filed this suit in September 2023. In May 2024, the FBI released additional records to Brown: it reviewed fifty-three pages of records and released forty-eight pages in full or in part, with certain information redacted. ECF No. 25-3 ¶ 16. The FBI also advised Brown that certain information was referred to other agencies for review. *Id.* In July 2024, the FBI made its final release to Brown, advising that five pages of records were reviewed, and three pages were being

2

released in full or in part, with appropriate redactions made by the Drug Enforcement Administration ("DEA") and the Executive Office for United States Attorneys ("EOUSA"). *Id.* ¶ 17. Brown moved for summary judgment, challenging the agency's withholdings and requesting in camera inspection. ECF No. 22. The FBI cross moved for summary judgment. ECF No. 25.[1]

## II.   Legal Standard

FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). Those exemptions "must be narrowly construed." *Id.* (internal quotation marks and citation omitted). "The burden is on the agency to justify withholding the requested documents," and a district court must "determine *de novo* whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). In the FOIA context, "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (alteration in original) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)).

---

[1]   In June 2025, Brown filed a "Notice of Power of Attorney" that "delegate[s] Power of Attorney to Dr. David Z. Simpson to act on [Brown's] behalf in this matter and any related legal proceedings," and purports to authorize Simpson "to receive correspondence, make filings, and coordinate communications regarding this . . . case and beyond." ECF No. 33 at 1 (emphasis omitted). But litigants can either be represented by an attorney or represent themselves in federal court, and there is no indication Simpson is an attorney. 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ."); *see, e.g.*, *Georgiades v. Martin-Trigona*, 729 F.2d 831, 834 (D.C. Cir. 1984). The Court accordingly continues to consider Brown a pro se litigant who is representing himself personally.

**III.     Discussion**

The Court first considers whether the FBI is entitled to summary judgment as to the adequacy of the search, and then considers whether its withholdings are justified and Brown's request for in camera review.

**A. The FBI Is Entitled To Summary Judgment As To The Adequacy Of The Search**

To "satisfy FOIA's aims of providing more transparency into the workings of the government," an agency must demonstrate that an adequate search for records responsive to a FOIA request was made. *Montgomery v. IRS*, 40 F.4th 702, 714 (D.C. Cir. 2022). This demonstration "entails a 'show[ing] that [the agency] made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Id.* (alterations in original) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

The Court concludes that the FBI complied with its search obligations. The FBI's declaration identifies and details the record systems and locations used for the FBI's search—including why the relevant information, if available, would be in those systems and locations—the search terms used, and the scope of the searches. ECF No. 25-3 ¶¶ 18–27. More specifically, the declaration explains that the FBI's Central Records System ("CRS") is "an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI." *Id.* ¶ 19. The CRS is organized into automated indices, which FBI personnel can access through Sentinel, the FBI's case management system. *Id.* ¶ 22. These indices "consist of millions of searchable records that are updated daily with newly indexed information." *Id.* ¶ 25. In addition, because the information requested by Brown "predates and/or overlaps the implementation of . . . Sentinel," a manual indices search was also conducted. *Id.* The FBI searched the Sentinel indices (as well as Sentinel's legacy system) using the term,

4

"Brown, Lewis," and processed sixty-two total pages of records, fifty-three pages of which the FBI released, in full or in part, to Brown. *Id.* ¶¶ 25–26; *see* ECF No. 25-1 ¶ 2.

Brown offers no evidence to contradict the declaration's assertions that the FBI searched all areas likely to contain the information sought, nor does the Court independently find any reason to doubt that the agency fulfilled its search obligations. To the contrary, Brown insists that the FBI's efforts were *too* comprehensive, and that it need not have referred documents to the DEA or EOUSA, which he characterizes as "evasive techniques and tactics." ECF No. 30 at 3–4. But if "a DOJ component receives a request for records in its possession and determines that 'another component, or another agency of the Federal Government, is better able to determine whether the record is exempt from disclosure under the FOIA,' it may '[r]efer the responsibility for responding to the request . . . to the component best able to determine whether to disclose it, or to another agency that originated the record.'" *Truesdale v. U.S. Dep't of Just.*, 731 F. Supp. 2d 3, 7 (D.D.C. 2010) (alteration and omission in original) (citation omitted); *see also Friedman v. U.S. Secret Serv.*, 282 F. Supp. 3d 291, 307–08 (D.D.C. 2017) ("Nor does the Court find fault with the [agency's] decisions to refer records to the agencies where they originated, notwithstanding plaintiff's assertion that 'these other agencies are only acting upon referrals from an agency acting in bad faith.'" (citation omitted)). And Brown's personal search preferences are irrelevant to the reasonableness of the scope and technique of the FBI's search. *See Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) ("[U]nder [the plaintiff's] approach, which would allow a requester to dictate, through search instructions, the scope of an agency's search, the reasonableness test for search adequacy long adhered to in this circuit would be undermined.").

Brown appears to suggest the search was inadequate because the FBI failed to produce a specific document "containing information, i.e. identification given by informant of the individual

known as 'Black.'" ECF No. 30 at 1; *see also* ECF No. 37 at 1 (stating that Brown "has sought a very specific record: the document identifying 'Black,' which was provided by the informant Levester Johnson at the point of his arrest on March 6, 1995"). But Brown's request did not mention any pre-arrest investigation into the alias "Black," and agencies "need not expand their searches beyond the four corners of the request, nor are they required to divine a requester's intent." *Am. Chem. Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (internal quotation marks and citation omitted). The FBI's search was tailored in accordance with the parameters of the FOIA request as drafted, and as noted, Brown modified his request to eliminate the portion pertaining to Levester Johnson. *See* ECF No. 1 at 2; ECF No. 1-1 at 10. Brown cannot now "expand the scope of his FOIA request" through this litigation. *Houser v. Church*, 271 F. Supp. 3d 197, 204 (D.D.C. 2017).

In any event, Brown offers no reason to think the FBI's search was unreasonable for failing to turn up the document he seeks. His theory appears to be that the incident report's use of the language, "known as 'Black,'" means there must be a document explaining why the individual was "known." ECF No. 1 at 4. But it is not at all clear why that must be so, and Brown does not provide any basis to conclude the FBI's search was inadequate for failing to produce such a document. *Cf. Willis v. U.S. Dep't of Just.*, 581 F. Supp. 2d 57, 67 (D.D.C. 2008) (explaining that a plaintiff cannot show that defendants failed to meet their obligations under FOIA "by merely referring to Plaintiff's belief that he was—and therefore is—entitled to certain documents, or that Defendants are simply perpetrating a large-scale fraud against him"). The Court accordingly concludes the FBI has met its burden in conducting an adequate search.

**B. The Agencies Properly Applied Various Exemptions To Fifty-Three Pages Released In Full Or In Part**

The Court concludes the agencies have justified their application of various FOIA exemptions to the fifty-three pages released in full or in part, and they have also satisfied their segregability obligations as to those pages.[2]

*1. The Agencies Properly Invoked Exemptions 6 And 7(C)*

The FBI, DEA, and EOUSA all invoke exemptions 6 and 7(C). *See* ECF No. 25-3 ¶¶ 34–45; ECF No. 25-4 at 56–57 ¶¶ 8–14; *id.* at 63–65 ¶¶ 9–13. Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) encompasses "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). "Exemption 7(C) is more protective of privacy than Exemption 6" and sets a lower bar for withholding information. *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 496 n.6 (1994)).

The agencies properly redacted certain information under exemption 7(C) within the fifty-three pages released in whole or in part. At the outset, to "show that the disputed documents were compiled for law enforcement purposes," an agency "need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an

---

[2] The FBI's declaration also invokes Privacy Act exemption (j)(2) but states that "the FBI has reviewed these records under the access provisions of . . . FOIA to achieve maximum disclosure." ECF No. 25-3 ¶ 29. The Court therefore need not separately address the applicability of the Privacy Act. *See, e.g., Dutton v. U.S. Dep't of Just.*, 302 F. Supp. 3d 109, 127 (D.D.C. 2018) (explaining that issue was addressed by FOIA discussion where court determined that FOIA exemptions were properly invoked and plaintiffs did not challenge application of Privacy Act exemption).

individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citation omitted). "Courts generally afford some deference to agencies 'specializing in law enforcement' that claim their records are eligible for Exemption 7(C) protection." *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 64 (D.C. Cir. 2018) (quoting *Ctr. for Nat'l Sec. Studs. v. U.S. Dep't of Just.*, 331 F.3d 918, 926 (D.C. Cir. 2003)).

All the agencies satisfy this threshold element. The FBI is a criminal investigatory and regulatory law enforcement agency within DOJ. *See* 28 U.S.C. § 531 ("The Federal Bureau of Investigation is in the Department of Justice."); *id.* §§ 533–35, 538–540D (listing some of the FBI's criminal investigatory and regulatory duties). The DEA and the EOUSA also specialize in law enforcement. *See Cooper v. U.S. Dep't of Just.*, 169 F. Supp. 3d 20, 35 & n.9 (D.D.C. 2016); *Cunningham v. U.S. Dep't of Just.*, 40 F. Supp. 3d 71, 86 (D.D.C. 2014). The declarants attest that the responsive records were compiled for an investigation into organized criminal activity and to execute associated arrest warrants. *See* ECF No. 25-3 ¶¶ 34–35; ECF No. 25-4 at 55–56 ¶¶ 5, 8–9; *id.* at 64 ¶ 11. Indeed, Brown's own interest in this action is based on his arrest records. *See, e.g.*, *Blackwell*, 646 F.3d at 40 (finding that, where plaintiff sought records relating to a criminal investigation and prosecution, it was "quite obvious[]" that the records were compiled for law enforcement purposes). The records here were compiled for law enforcement purposes.

The Court therefore turns to the balancing test under exemption 7(C). The FBI, DEA, and EOUSA withheld the names and identifying information of agency special agents and professional staff, third parties mentioned, persons of investigative interest, and local law enforcement personnel. *See* ECF No. 25-3 ¶¶ 33, 40–45; ECF No. 25-4 at 56–57 ¶ 11; *id.* at 64 ¶ 12. Law enforcement agents and support personnel have a well-recognized and substantial privacy interest in withholding information about their identities, and redaction of their names has been routinely

upheld. *See, e.g.*, *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980); *see also, e.g.*, *Ball v. U.S. Marshals Serv.*, No. 19-cv-1230, 2021 WL 4860590, at *6 (D.D.C. Oct. 19, 2021) ("Courts have repeatedly found that it is proper to withhold names and other identifying information about law-enforcement officers and government officials under Exemption 7(C)."). The names and personal information of third parties of investigative interest, and even third parties merely mentioned, are also commonly protected. *See Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("[O]ur decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants."). The agencies have all "described, plausibly and in considerable detail, the harms one might reasonably expect to flow from the public disclosure of such information." *Schoenman v. FBI*, 763 F. Supp. 2d 173, 198 (D.D.C. 2011); *see* ECF No. 25-3 ¶¶ 40–45; ECF No. 25-4 at 57 ¶ 12; *id.* at 64 ¶ 12. Accordingly, the agencies' "representations suffice to establish 'a reasonable likelihood' that the disclosure of such information would result in an unwarranted invasion of personal privacy," and "courts have repeatedly upheld identical withholdings." *Schoenman*, 763 F. Supp. 2d at 199. These privacy concerns significantly outweigh what little benefit the public may gain from this information as to its understanding of agency operations. *See, e.g.*, *id.* at 199–200.

Brown has not demonstrated any significant public interest with respect to any of these protected categories of information. He appears to suggest that exemptions 6 and 7(C) are inapplicable because Levester Johnson testified in open court. *See* ECF No. 30 at 5–6. But that is irrelevant because Brown eliminated the portion of his request pertaining to Johnson, and the agencies did not redact any of the records to conceal the identity of any informant. *See* ECF No. 31 at 3 (citing ECF No. 25-3 ¶ 33). Indeed, Brown appears to concede that names of staff were

9

properly redacted. *See* ECF No. 30 at 6 ("Plaintiff's request could not and did not seek any names of any staff and they could've easily been censored."). And to the extent Brown seeks disclosure of information to challenge his conviction, that would not provide the requisite public interest to overcome the substantial privacy interests at play. *See, e.g.*, *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1177 (D.C. Cir. 2011) (explaining that individual's "personal stake in the release of the requested information is 'irrelevant' to the balancing of public and third-party privacy interests required by Exemption 7(C)").

Accordingly, the redactions within the fifty-three pages released in full or in part are justified under exemption 7(C).

    2. *The FBI Properly Invoked Exemption 7(E)*

The FBI also relies on exemption 7(E), which protects from disclosure law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Under this exemption, the D.C. Circuit has set "a relatively low bar for the agency," requiring it only to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (citation omitted). As already discussed above, the records at issue were prepared for law enforcement purposes.

The FBI redacted information in the fifty-three pages released in full or in part to protect (1) nonpublic coordination with other government agencies, and (2) sensitive information contained within FBI FD-515 forms, which are used by FBI personnel to report "investigative accomplishments" such as an arrest or conviction. *See* ECF No. 25-3 ¶¶ 47–51. The FBI's declaration explains that public access to this information "would allow criminals to structure their behavior to avoid investigative triggers that would initiate an investigative referral from the FBI

10

to its partners, and investigative scrutiny by additional government agencies." *Id.* ¶ 48. Further, "release of this information could reveal which agencies cover specific types of investigative or intelligence matters," and could "enable criminals to predict and circumvent FBI investigative coordination with its government partners, and circumvent the law enforcement purpose of these partnerships and information sharing techniques." *Id.* The declaration also states that the FBI withheld numerical "effectiveness ratings" assigned to various investigative techniques employed during the investigation. *Id.* ¶ 49. If those ratings were disclosed, "others involved in similar criminal activities could change their methods and modus operandi in order to circumvent and avoid detection." *Id.*

The FBI properly redacted these categories of information under exemption 7(E). The declaration identifies the specific investigatory function of the redacted information and the legitimate risk of exposing it. The FBI has sufficiently established that the information about its coordination with other agencies is private and that its exposure "could alert potential criminals to the techniques that the FBI finds useful in a certain type or stage of investigation, as well as their law enforcement partners that might be involved in these investigative methods." *Kowal v. U.S. Dep't of Just.*, No. 18-cv-2798, 2021 WL 4476746, at *6 (D.D.C. Sept. 30, 2021). Indeed, "many courts" in this District "have upheld the redaction of 'effectiveness ratings' columns" in FD-515 forms. *Guarascio v. FBI*, No. 18-cv-2791, 2023 WL 7182057, at *12 (D.D.C. Nov. 1, 2023).

Brown again offers no reason to conclude the redactions under exemption 7(E) were improper. In fact, he states that based on his modified request, "no investigative techniques needed to be exposed." ECF No. 30 at 7. The Court accordingly concludes that the FBI properly relied on exemption 7(E) in redacting the fifty-three pages released in full or in part.

### 3. The Agencies Properly Invoked Exemption 7(F)

The DEA and EOUSA also invoke exemption 7(F). *See* ECF No. 25-4 at 57–59 ¶¶ 15–20; *id.* at 65 ¶¶ 14–15. Exemption 7(F) protects law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Exemption 7(F) generally serves to protect "names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester." *Hammouda v. U.S. Dep't of Just. Off. of Info. Pol'y*, 920 F. Supp. 2d 16, 26 (D.D.C. 2013) (citation omitted). Again, the Court has already found that the records at issue were prepared for law enforcement purposes.

The DEA relied on exemption 7(F) to protect names and identifying information of DEA agents, and the EOUSA protected names and identifying information of individuals who were interviewed by the FBI. *See* ECF No. 25-4 at 57–59 ¶¶ 15–20; *id.* at 65 ¶¶ 14–15; *id.* at 67. The declarations describe the risk of harm to these individuals if they were to be identified, including prejudice to the agents' ability to execute their duties, a chilling effect on the agencies' abilities to confer with third-party individuals, and a risk of targeting and physical danger to all these third parties. *See* ECF No. 25-4 at 57–59 ¶¶ 15–20; *id.* at 65 ¶¶ 14–15; *id.* at 67. Law enforcement personnel and interviewees fall squarely into the category of persons who warrant protection under exemption 7(F). *See, e.g.*, *Williams v. Dep't of Just.*, No. 19-cv-0104, 2023 WL 2424738, at *4 (D.D.C. Mar. 9, 2023). And once again, Brown argues only that exemption 7(F) is "inapplicable," while asserting that his request allowed for "the censorship of any material, they chose to consider non-releasable." ECF No. 30 at 6. While the Court has already held that exemptions 6 and 7(C)

are applicable, alternatively, the DEA's and EOUSA's reliance on exemption 7(F) is warranted for redactions within the fifty-three pages released in full or in part.[3]

### C. The FBI Has Not Established That It Properly Withheld Remaining Pages In Full

The FBI's submissions indicate that some pages may have been withheld in full. *See* ECF No. 25-1 ¶ 2 ("In response to Plaintiff's FOIA request, the FBI has processed a total of 62 pages of records and has released 53 pages in full or in part."). Insofar as that is the case, the FBI has failed to justify those withholdings. The FBI's declaration states that its *Vaughn* index "identifies the pages that the FBI withheld *in full* or part and its justification for doing so." ECF No. 25-3 ¶ 31 (emphasis added). But the FBI's *Vaughn* index does not mention any pages withheld in full, and the agency declarations do not describe the nature of those pages or the FOIA exemptions relied upon for withholding them.

The FBI's May 2024 letter to Brown also states that "a deleted page information sheet was inserted to indicate where pages were withheld entirely pursuant to applicable exemptions." ECF No. 25-4 at 38. But "those pages have not been placed in the record," and the FBI is thus obligated "to supplement the record with the pages and/or a declaration that describes the contents of the withheld documents in reasonable detail to permit a proper examination." *Giovanetti v. FBI*, No. 13-cv-1807, 2015 WL 12559868, at *3 (D.D.C. Mar. 26, 2015). Otherwise, the Court cannot

---

[3]  A district court "cannot approve withholding exempt documents without making an express finding on segregability." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (internal quotation marks and citation omitted). An agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original) (citation omitted). Here, the agency declarants attest that all segregable information has been produced. *See* ECF No. 25-3 ¶¶ 30, 55; ECF No. 25-4 at 59 ¶ 21; *id.* at 65–66 ¶¶ 16–19. These representations, which are supported by *Vaughn* indices describing the documents and the exemptions, satisfy FOIA's segregability requirement as to the pages released in full or in part. *See, e.g.*, *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

determine whether it was necessary for the FBI to fully withhold these documents, or whether the information could have been reasonably segregated. *See, e.g.*, *Jud. Watch v. Rossotti*, 285 F. Supp. 2d 17, 32 (D.D.C. 2003) (ordering defendant to "supplement the record with a brief and affidavit(s) addressing the potential segregability of the exempted information in the completely withheld documents").

To be clear, the Court is not crediting Brown's assertions that the agencies have engaged in bad faith. As it stands, the Court "does not doubt that" the FBI indeed "conducted a segregability analysis of responsive documents. Nevertheless, the Court believes that the [FBI] can provide a more comprehensive description as to [any pages] withheld in full." *See Elec. Frontier Found. v. U.S. Dep't of Just.*, 826 F. Supp. 2d 157, 174 (D.D.C. 2011); *see also, e.g.*, *Barouch v. U.S. Dep't of Just.*, 87 F. Supp. 3d 10, 31 (D.D.C. 2015) (explaining that because defendants "failed to provide virtually any description" of records withheld in full, the court could not determine whether any FOIA exemptions were applicable or whether any of the records were reasonably segregable).

Accordingly, the FBI is not entitled to summary judgment at this stage for any pages withheld in full.

### D.  Brown's Request For In Camera Inspection Is Denied

Finally, Brown asks the Court to conduct an in camera inspection because "he has not received the requested document or information, but he believes the document(s) sought may yet be in the custody or control of the Defendant FBI based on items provided from another agency that was apparently withheld by the Defendant." ECF No. 22 at 4. In camera review "may be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency." *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). "If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information

14

is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) (internal quotation marks and citation omitted).

Here, the Court has concluded that, based on the detailed declarations and *Vaughn* indices, the FBI has met its burden with respect to the fifty-three pages released in full or in part. As for any documents withheld in full, "a district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn*," so "the best approach is to direct the agency to revise their *Vaughn* submissions, taking into account the deficiencies identified by the Court." *Elec. Frontier Found.*, 826 F. Supp. 2d at 175 (quoting *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998)). Brown's mere assertions of bad faith do not change that conclusion. *See Assassination Archives & Rsch. Ctr. v. CIA*, 177 F. Supp. 2d 1, 8 (D.D.C. 2001) ("[A] mere assertion of bad faith is not sufficient to overcome a motion for summary judgment."). And in any event, in camera review is not warranted because there is no indication the document Brown now seeks is in the FBI's possession, nor was it in its production, and FOIA does not require an agency "to create documents" or "to answer questions." *See Brown v. FBI*, 675 F. Supp. 2d 122, 129 (D.D.C. 2009).

Accordingly, Brown's request for in camera review is denied.

### IV.  Conclusion

For these reasons, the FBI's cross motion for summary judgment, ECF No. 25, is granted in part and denied in part without prejudice. The motion is granted as to the adequacy of the FBI's search and the agencies' redactions of the fifty-three pages released in full or in part. The motion is denied without prejudice as to any documents withheld in full. Brown's motion for summary judgment and for in camera inspection, ECF Nos. 22, 38, is denied.

By October 7, 2025, the FBI shall file a notice clarifying whether any documents were withheld in full. If documents were withheld in full, the FBI shall also supplement the record by that date with either an updated declaration, an updated *Vaughn* index, copies of the deleted withheld pages, or some combination thereof, identifying (1) the pages withheld in full; (2) the FOIA exemptions applied to each of those pages and the justification for the exemptions; and (3) the segregability, or lack thereof, of the information contained therein.

The Clerk of Court is directed to mail a copy of this memorandum opinion and order and an updated copy of the docket sheet to Brown.

_____
AMIR H. ALI
United States District Judge

Date: September 16, 2025